The opinion of the court was delivered by
Tirghman, C. J.
The case depends on the eleventh fundamental article in the seventh section of the act of the 21st of March, 1814, entitled “ an act regulating banks.” This article, so far as concerns the present question, is in the words following: “The stock of each of the said companies shall be assignable and transferable on the books of the company only, and in such manner as the byrlaws shall ordain, but no stockholder indebted to the institution, shall be authorized to make a transfer, or receive a dividend, till such such debt shall have been discharged, or security, to the satisfaction of the directors, given for the same.”
It will be recollected that this act brought into existence forty banks, scattered through the state, and most of them out of the city of Philadelphia; so that, in a doubtful case, it would be wrong to give it a construction different from the common import of the words, in order to make.its provisions conformable to any supposed custom of doing business in the city. Indeed, no custom *143 of the Mechanics’ Bank, which can affect the present question, was proved,- so that I throw out of consideration all arguments drawn from that source. Where words have acquired a technical meaning, it is to be presumed that they are used in that sense, unless there be something in the statute which shows a contrary intent; for wherever the-intent of the legislature plainly appears, it governs the construction. But where words are not technical, their meaning is, in general, best ascertained by common par-lances. Laws afe made for the people, ánd should be expressed in language which they understand. Now the word indebted has not acquired a technical signification, and, in common understanding, means a sum of money which one has contracted to pay to another, whether the day of pajunent be come or not. Even in law language we speak of debitum in prsesenti, solvendum in futuro,—a present debt, to be paid in a future time. So, in act of assembly language, a debt signifies money payable at a future time. For example,- the Intestate Law of the 19th of %Upril,\794, section 14, enacts, that “ all debts owing by any person within this state at the time of his decease,” shall be paid by his executor or administrator in a certain order prescribed by the said act. No man ever doubted that this order extended to all money which the intestate was bound to pay, whether actually due at the time of bis death or not. Suppose one who had drawn notes and circulated them, to a large amount, should make a voluntary transfer of his property before they fell due, could it be said that this was fair, because, at the time of transfer, he was not indebted on these notes? But let us consider whether there is any thing in the general policy of the act of March, 1814, which should divest this word indebted, of its usual meaning. It is said by the counsel for the plaintiffs, that it would be extremely inconvenient, and hard, on stockholders, if (hey were to lose the right of making transfers, or receiving dividends, merely because they happened to draw or indorse a note, which was discounted in a bank, perhaps without their knowledge. That' an inconvenience might sometimes happen in this way, is .true; but it is believed not often, because the directors would not be apt to refuse permission to transfer, or withhold dividends in stock, unless there was danger of loss; besides, the stockholders derived no small advantage from the facility with which they obtained discounts on the faith of a lien on their stock. The question is, however, not whether stockholders might be put to inconvenience, but what was the intent of the law. Now, no doubt, this restraint on the transfer of stock was intended for the benefit'of the bank. But of what benefit would it be, if the stockholder had the unrestrained right of transfer, at atiy time before his note fell due? The time of making this loan, is that at which the directors must look out for security. If the stock was pledged by law, they might be easy as to other security. But if, trusting to this pledge, they discounted a stock *144 holder’s note, who had the right to withdraw his stock at pleasure, then the security in fact amounted to nothing. To be sure, if it were clearly ascertained, that by indebted the law meant nothing but a debt actually due, the bank directors would have no right to complain; because they would know that the stock was no security, and therefore they must look well to the character and property, (other than stock,) of the drawers and indorsers, before a note was discounted, or demand an actual pledge of the stock. And indeed this is the actual situation of the Mechanics’ Bank and many others incorporated by the same original act of March, 1814, and rechartered by the act of the 25th of March, 1824, entitled “ An- Act to recharter certain Banks.” In this last act, the words of the eleventh fundamental article are strikingly different from those of the same article in the act of 1814. Instead of saying, “no stockholder indebted to the institution,” the expressions are, “ no stockholder indebted to the bank, for a debt actually due and unpaid, shall be authorized to make a transfer,” &c. This, however, was not intended as an explanation of the first law, but an alteration, in consequence of a change of policy. What occasioned this change of policy, it is unnecessary to inquire. This right of lien in the bank was brought before the court, in the case of Rogers and others v. The Huntingdon Bank, at Chambersburg, October Term, 1824, which will be reported in 12 Serg. & Rawle, now in the press.* I will not undertake to be positive that the very point now in question was decided, but I am satisfied that it was in the mind of the court, and their opinion was in favour of the lien. In the present case, therefore, the plaintiffs had no right to a transfer, the notes of Messrs. Williams, (the owners of the stock,) which had been discounted by the bank, not having been paid, or security given for payment, and consequently this action is not maintainable.
There was a second count in the declaration, for money had and received, &c.-, intended for the recovery of the dividends on the stock which fell due after the 7th of August, 1822. As the plaintiffs’ claim of dividends stands precisely on the same ground as their right to receive a transfer, I have thought it unnecessary to say any thing particular on that head.
Judgment for the defendants.

 Since reported.